IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

NATE A. LINDELL,

                Plaintiff

v.

GARY BOUGHTON, *et al.,*

                Defendants.

OPINION AND ORDER

Case No. 18-cv-895-slc
_____

*Pro se* plaintiff Nate A. Lindell is proceeding in this lawsuit under 42 U.S.C. § 1983, against defendants Boughton, Brown, Gallinger, Kartman, and John Doe 1 on Eighth Amendment claim for their alleged failure to protect him from being shanked on October 8, 2018, at the Wisconsin Secure Program Facility (WSPF) by another prisoner, Jesse Keith. Lindell is also proceeding against defendant John Doe 2 on a First Amendment retaliation claim for that defendant's decision to transfer him immediately to the Green Bay Correctional Institution (GBCI). Lindell has filed multiple discovery-related motions (dkt. 47, 50, 59), and defendants filed a motion to revoke Lindell's in forma pauperis status (dkt. 60). For the following reasons, I am granting some of Lindell's requests, granting defendants' motion to revoke Lindell's in forma pauperis status, and giving Lindell two weeks to submit the full $400 filing fee due in this lawsuit to avoid dismissal.

I.    **Lindell's Motions**

   A.    **Motion to Substitute Kartman for John Doe 2 (dkt. 50)**

Lindell has identified Security Director Mark Kartman as John Doe 2, the individual who allegedly transferred him in retaliation due to his litigious history. The motion is granted. Lindell has not identified John Doe 1 (his deadline was November 15, 2019, *see* dkt. 43, at 5), so I am dismissing John Doe 1 with prejudice.

   B.    **Motion to Compel and for Appointment of Counsel (dkt. 47)**

In this motion, Lindell points to deficiencies in defendants' responses to 15 of his discovery requests. Having reviewed Lindell's discovery requests and defendants' responses, I am granting some of Lindell's requests and denying others. **May 1, 2020** is defendants' deadline to provide the information that I am ordering produced.

Here are my findings:

1.    Lindell requested the policy and procedure setting forth when and how prisoners are to be patted down. Defendants represent that they made the applicable policy, DAI 306.17.02, Search of Inmates, available to Lindell, and he reviewed it on January 24, 2020. Lindell does not dispute that he had the ability to review this policy, and he does not explain how a review of this material is insufficient for him to have gathered relevant evidence about that policy. This request is **denied**.

2.    Lindell asked for the names and prisoner numbers of the prisoners located on the range where the stabbing occurred because they are potential witnesses. Defendants

objected to the request as overly broad and because Lindell suggested that defendants draw the information from the Wisconsin Integrated Corrections System (WICS), which does not contain information about where prisoners are held on a particular date. However, defense counsel also represent that they have asked institution staff whether there is any record that would show the placement of prisoners for a particular day and indicated an intent to supplement that response based on the response from the institution. Because defendants appear to be making reasonable efforts to respond fully to this request, I will not order them to do more at this point. This request is **denied without prejudice**.

3. Lindell claims that defendants refused to provide materials they considered to be--or that might be--relevant to his discovery requests. This request is overbroad and requires defendants to speculate as to what Lindell seeks; defendants objected accordingly. Lindell has not followed up by identifying with any specificity how his request relates to his Eighth or First Amendment claims against defendants. This request is **denied**.

4. Lindell asked for any pre-October 8, 2018, correspondence from non-prisoners to WSPF's administration that may have alerted them to the dangerousness of unsupervised group activities for prisoners in the HROP or PACE programs, as well as any inmate complaints related to the same concern. Defendants objected for a number of reasons, including that inmate complaints are confidential, *see* Wis. Admin. Code § 310.16, and may contain medical information of other prisoners protected from disclosure by HIPAA and other privacy laws. However, defendants also indicated that their search revealed 26 inmate complaints mentioning "HROP," and 34 mentioning "PACE" between

2017 and the present. Defendants further propose a limited production of those inmate complaints; they ask to produce inmate complaints (1) filed between April 8, 2018 and October 8, 2018; (2) that specifically reference the danger of WSPF's practice of exposing prisoners in the HROP or PACE programs to recreation periods with other prisoners; and (3) that defendants were involved in resolving the inmate complaint. They also ask that I permit them to redact any identifying information of other prisoners or information that may be confidential. Defendants make no mention about the other types of communications Lindell requested.

As for the inmate complaints, I agree with Lindell that communications and complaints defendants received about the dangerousness of subjecting prisoners on HROP and PACE status may be relevant to his claims that defendants Boughton, Brown, and Kartman were deliberately indifferent to a substantial risk that prisoners in HROP or PACE would be assaulted during congregate activities. However, defendants raise legitimate concerns about the confidentiality of other prisoners' complaints, since they are not a part of this lawsuit. Therefore, I will require defendants to produce the requested inmate complaints with the following limitations.

First, identifying and confidential information must be redacted. As to defendants' proposed timeframe (April 8, 2018, to October 8, 2018), Lindell alleges that the PACE program changed in May of 2018 to require prisoners in the program to attend recreation with other prisoners, so I will accept defendants' proposed time frame. I also agree that limiting the complaints to Lindell's specific concern about the dangerousness of recreation

4

is reasonable. However, I am rejecting defendants' third proposal, which appears to limit disclosure to the complaints that the defendants were directly involved in investigating or resolving. For other complaints to be admissible evidence, Lindell would need to fill in the blanks about what defendants Brown, Boughton, and Kartman actually knew about the allegations; but Lindell is entitled to discover the complaints in which the defendants were not directly involved to attempt to show that the defendants knew about them. Therefore, defendants will have to produce any inmate complaints filed between April 8, 2018 and October 8, 2018, challenging the HROP or PACE program's requirement that prisoners attend recreation with other prisoners.

As for emails and communications from non-prisoners, defendants must either produce such documents or respond specifically to this request. Accordingly, Lindell's request is **granted in part as explained above**.

5.  Lindell requested inmate complaints written by other prisoners complaining about being attacked or fighting with another prisoner during congregate activities in WSPF's restrictive housing. Defendants objected for a number of reasons, including confidentiality, but defendants also disclosed that a search of the inmate complaint review system produced eight inmate complaints since 2017 in which the prisoner referenced an "attack" and HROP or PACE.

Defendants have not offered to allow Lindell to review redacted copies of these eight complaints, claiming that they are confidential. There is no indication that identifying and confidential material defy redaction. If any of these inmate complaints were submitted

5

between April 8, 2018, and October 8, 2018, defendants should produce them with the appropriate redactions. This request, therefore, is **granted with the same limitations described above in No. 4**.

6. Lindell asked defendants to produce all the materials they provided to the sheriff's department related to the October 8, 2018, incident in which Keith stabbed Lindell. Defendants responded that the DOC does not keep lists of what was turned over to the sheriff's department, and, in any event, such information would be duplicative of the information defendants already produced. The AGO further represents that it has asked the institution to try to locate the documents produced to the sheriff's department, and defendants will supplement their response accordingly. Because defendants are making a good faith effort to discern what actually was turned over to the sheriff's department related to Lindell's assault, this request to compel is **denied without prejudice**.

7. Lindell asked defendants to produce bodycam or camera footage, photos and audio footage related to the October 8, 2018, assault. Defendants responded by directing Lindell to set an appointment with a litigation coordinator to review it. However, defendants report that Lindell's first appointment was canceled due to an institution lockdown, and that when he actually was allowed to view it on January 24, 2020, there were technical glitches. Because of delays related to those technical issues, Lindell was not scheduled to view the recording until mid-February. Lindell does not dispute that he has been able to view the footage, but he suggests that more bodycam footage exists than he

viewed. Specifically, he believes that the officers who subsequently investigated the cause of the attack would have bodycam footage containing relevant information. Defendants represent that they produced all responsive footage, and Lindell has not submitted any evidence (beyond his speculation) that additional responsive video or audio footage related to his claims exists. Therefore, this request is **denied**.

8. Lindell requested copies of correspondence discussing Jesse Keith prior to October 8, 2018. Defendants objected to this request as overbroad and vague, noting that they produced all incident reports, conduct reports, memoranda and correspondence related to the October 8, 2018, stabbing. Lindell points out that he also wants any pre-October 8, 2018, communications. Lindell may have any pre-October 8, 2018 communications that would suggest defendants had knowledge of Keith's dangerousness. This request is **granted in part.**

9. Lindell requested conduct reports, interview requests and correspondence about Keith--including any mail from Keith saying he was going to kill Lindell--from prior to October 8, 2018. Defendants objected on the ground that this request seeks confidential information, and disclosing such communications could lead to a breach of security, but they don't explain how. As with No. 8, Lindell may have communications about Keith or from Keith that touch upon his dangerousness or intent to kill Lindell. This request is **granted in part.**

10. Lindell requested video and audio evidence showing who brought Keith and Lindell to the recreation room, and whether Keith was pat-searched. This request

duplicates Lindell's request for a recording of the incident discussed in Number 7 above, so it is **denied**.

11.     Lindell requested the DOC policy related to when and how audio video recordings are preserved.  Defendants responded by identifying the policy, DAI Policy 306.00.14, Protection, Gathering and Preservation of Evidence, but they objected to producing that policy because of the security concern that prisoners would use the information in the policy to hide or alter evidence.  Still, defense counsel arranged for Lindell to review the policy by coordinating with the litigation coordinator, and Lindell was allowed to review the policy on January 24, 2020.  Lindell's access to the policy should be sufficient for him to have recorded the contents of the policy and use it in this lawsuit, so this request is **denied**.

12.     Lindell requested copies of transcripts of any phone calls or interviews by Keith or anyone else discussing the stabbing.  Defendants responded that they produced all documentation related to the stabbing, and Lindell does not indicate he has a good faith basis to believe that defendants are withholding any transcripts related to the assault.  Therefore, this request is **denied**.

13.     Lindell asked defendants to admit that on June 6, 2018, a shakedown of all the cells in the Alpha unit at WSPF recovered more than 10 weapons in prisoners' cells or other areas, and asked defendants to turn over interview requests, conduct reports, activity logs or other documents related to the recovery of those weapons.  Defendants have admitted that there was a search on June 6, 2018, but they denied that over 10 weapons

were found.  Defendants objected to producing the requested documents, citing security concerns and arguing that Lindell did not actually seek production of this information, choosing instead to embed it in a request to admit.  Finally, defendants point out that in response to an interrogatory, they reported that between October 2017 and October 2018, there were six fights involving HROP and PACE programs, and that three of those fights involved homemade weapons.

In this instance, I will require Lindell to serve defendants with a request for production of the documents related to the June 6, 2018, search for weapons, which will give defendants a chance to amplify their claimed security concerns.  I suppose this constitutes kicking the can down the road, but the court will wait for a better explanation from the defendants before it makes a final ruling on this request.  Lindell's request for an order compelling production of these documents is **denied without prejudice**.

14. Lindell requested that defendants admit that prior to October 8, 2018, they received information from William Grender that Jesse Keith wanted to stab him. Defendants responded that this information is not relevant.  I disagree.  Such information is at least discoverable in support of Lindell's claim that the defendants were deliberately indifferent to Keith's dangerousness in general by allowing him to interact freely with other prisoners.  This request is **granted**.

15. Lindell asked the defendants to admit that prior to October 8, 2018, they knew of several investigations into prisoners on Alpha unit suspected of wanting to harm other prisoners.  Defendants objected to this request as overbroad and vague, but counsel

9

represent that they have been working with defendants to determine whether they knew about such investigations and will supplement their response when completed. Given that defendants intend to respond substantively to this request for admission, Lindell's request to compel a response is **denied without prejudice**.

Finally, Lindell has renewed his request for the court to recruit a volunteer attorney for him and to stay this case during this period. Although Lindell claims otherwise, the legal and factual difficulties of this case do not exceed his ability to litigate it. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). I already have concluded that Lindell is highly capable of meeting the demands of this lawsuit, and his complaints about defendants' responses to his discovery requests do not change that finding. On the contrary, Lindell's motion and interactions with defense counsel illustrate his ability to make relevant discovery requests and to pursue them in the same manner that an attorney would. This request is **denied.**

### C. Motion Related to DVDs (dkt. 59)

Lindell asks that I direct that defense counsel to submit copies of the DVDs containing the video footage related to the October 8, 2018, assault. He also asks that copies of the DVDs be provided to his expert witness. I am denying both requests.

I expect that defendants will submit copies of the video and audio recording of the October 8, 2018, assault either along with a dispositive motion or prior to trial. I see no reason to review the footage before they do so. As for Lindell's request that the video

footage be sent to his expert witness, Lindell does not explain why he needs an expert to review and opine about the video footage to prove his Eighth Amendment deliberate indifference claim against defendants. Rather, it appears that, to prove improper procedures were used when Keith entered the recreation area with Lindell, Lindell can point to the applicable policies and compare them to what happened with Keith. It does not appear that Lindell needs an expert to help the jury determine whether improper procedures were used, and whether any failures were causal to Keith's attack and Lindell's injuries. I will not direct defense counsel to send Lindell's expert witness the video footage. If Lindell can explain why the expert witness needs to review the video footage to prepare an opinion relevant to Lindell's Eighth Amendment deliberate indifference claims, then he may renew this request.

## II. Defendants' Motion to Revoke Lindell's IFP Status (dkt. 60)

Defendants seek to revoke Lindell's in forma pauperis status pursuant to 28 U.S.C. § 1915(g). Under § 1915(g), "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." Defendants' position is that Lindell has more than three strikes against him, and because his failure to protect claims did not suggest that he was in imminent danger of serious physical injury at the time he filed this lawsuit, he may not

proceed in forma pauperis. Defendants add that two courts in the Eastern District of Wisconsin recently granted a motion to revoke Lindell's in forma pauperis status for the same reason. *Lindell v. Kind*, No. 19-cv-702, 2020 WL 847353, at *1 (E.D. Wis. Feb. 20, 2020); *Lindell v. Pollard*, No. 19-cv-255-LA-WED (E.D. Wis. Jan. 13, 2020).

I agree that Lindell has struck out. He earned one strike in *Lindell v. Huibregtse*, No. 05-C-3-BBC (W.D. Wis.), since the Court of Appeals for the Seventh Circuit amended the district court's judgment to be a dismissal with prejudice as frivolous or malicious, and Lindell earned a second because the court dismissed his appeal for the same reason, *Lindell v. Huibregtse*, 205 F. App'x 446, 450 (7th Cir. 2006). Lindell earned a third strike in *Lindell v. Esser*, No. 13-cv-563-wmc (W.D. Wis. Apr. 1, 2015), because his case was dismissed for failure to state a claim. Finally, he earned a fourth strike in 2007 when his petition for certiorari to the United States Supreme Court was dismissed as frivolous or malicious. *Lindell v. Huibregtse*, 549 U.S. 1336 (2007).

Lindell does not deny that he has incurred three strikes. Rather, he opposes the motion on the ground that his complaint alleged imminent harm because he complained about his ongoing mental health treatment at GBCI after his transfer there. However, I did not grant Lindell leave to proceed in this lawsuit related to his mental health treatment at GBCI. I severed those claims from this lawsuit because his mental health care claims did not involve the same transaction, the same occurrence or the same defendant. Lindell did not object to this severance.

I conclude, therefore, that § 1915(g) prohibits Lindell from proceeding in this lawsuit in forma pauperis unless he alleged imminent harm. Lindell's claim in this lawsuit relates to an assault that took place at WSPF, and when he filed this lawsuit, he had been transferred to GBCI and did not allege that he was in imminent danger of another prisoner assault. Accordingly, may not proceed in this lawsuit in forma pauperis, and he must pay the full filing fee of $400 within two weeks if he wants to avoid dismissal of this lawsuit.

ORDER

IT IS ORDERED that:

1) Plaintiff Nate Lindell's motion to amend schedule, compel and appoint counsel (dkt. 47) is GRANTED IN PART and DENIED IN PART, as provided above.

2) Lindell's motion identifying Mark Kartman as the Doe defendant (dkt. 50) is GRANTED, and Kartman is substituted as John Doe 2.

3) Defendant John Doe 1 is DISMISSED WITH PREJUDICE.

4) Lindell's request that the DVD's made available to him be submitted to the court and emailed to his expert (dkt. 59) is DENIED.

5) Defendants' motion to revoke Lindell's in forma pauperis status (dkt. 60) is GRANTED.

6) Lindell's in forma pauperis status is REVOKED. To proceed with this lawsuit, he must pay $400 to the clerk of court by **April 15, 2020**.

Entered this 1st day of April, 2020.

BY THE COURT

/S/

STEPHEN L. CROCKER
Magistrate Judge