IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

NATE A. LINDELL,

              Plaintiff

  v.

GARY BOUGHTON,
LEBBEUS BROWN,
C.O. SHAWN GALLINGER, and
MARK KARTMAN,

              Defendants.

OPINION AND ORDER

18-cv-895-slc
_____

*Pro se* plaintiff Nate A. Lindell is proceeding in this lawsuit under 42 U.S.C. § 1983, against defendants Boughton, Brown, Gallinger, and Kartman on Eighth Amendment claims for their alleged failure to protect him from being shanked on October 8, 2018, at the Wisconsin Secure Program Facility (WSPF) by another prisoner, Jesse Keith. Lindell is also proceeding against Kartman on a First Amendment retaliation claim for his decision to transfer him immediately to the Green Bay Correctional Institution (GBCI). Lindell recently filed four motions: two motions related to Lindell's request that defendants turn over video footage related to the incident (dkts. 80, 96); a motion to amend his complaint (dkt. 86); and a motion to extend the dispositive motion deadline until at least August 24, 2020 (dkt. 95). Defendants oppose Lindell's motions to compel and most recently sought to supplement their opposition in a motion for leave to file a sur-reply. (Dkt. 98.) Defendants' motion for leave to file a sur-reply is granted, and for the reasons that follow, I am denying Lindell's motions.

1

I.      **Motions Related to Production of Video Footage (dkts. 80, 96, 98)**

Lindell asks that I either sanction defendants or compel them to turn over footage from certain hallway cameras and the body-worn cameras (BWC) of the officers responsible for transporting Lindell and Keith to the same recreation room on October 8, 2018, and from the 16 officers that responded to the assault. Lindell claims that the BWC footage in particular should exist because, pursuant to DAI Policy 306.16.01, officers are required to turn on their BWC whenever they have contact with inmates, and such footage should be preserved in anticipation of litigation.

Lindell argues that all of the footage should been preserved because the defendants planned to pursue criminal charges against Keith for stabbing Lindell, and because Lindell submitted a grievance alerting defendants to the possibility that Lindell would sue. However, according to Lindell, defendants produced only "some" BWC footage related to the October 8, 2018, and that defendants failed to produce any footage from (1) security cameras monitoring the hallway where Lindell claims he collapsed after the stabbing, or (2) the doorstep to the recreation room. Lindell argues that if defendants cannot produce this footage, then he is entitled to a spoliation sanction against them.

Defendants oppose the motion on the merits, arguing that that all of the video footage that captured the October 8, 2018, stabbing has been preserved and made available to Lindell for his review.[1] As to the body camera footage, defendant Kartman, WSPF's

---

[1] Defendants initially argued that Lindell failed to meet and confer about this motion, but walked back that argument in their sur-reply, apparently now having reviewed the letters Lindell sent counsel about

security director, submitted a declaration explaining that not all security staff members involved in the events of October 8, 2018, were wearing body cameras; rather, only the staff assigned to the Alpha Unit at WSPF had cameras, and that does not include staff that were called to the Alpha Unit as backup. (Second Kartman Decl. (dkt. 85) ¶ 5.) In particular, Kartman attests that at the time Lindell was attacked, seven security staff were assigned to Alpha Unit: defendant Gallinger, Correctional Officer Mary Taylor, Correctional Officer Joshua Fedie, Sergeant Cyle Warn, Correctional Officer Adam Theilen, Correctional officer Tonia McCollough, and Correctional Officer Dustin Jaynes. (*Id.* ¶ 7.) Kartman represents that when Alpha Unit staff responded to the stabbing incident, each of these officers activated his or her BWC, which created 16 separate events related to that incident, all of which defendants made available to Lindell. (*Id.* ¶ 9.) Kartman acknowledges that 12 officers who responded to the attack from other units did not wear BWC, and thus no footage from them exists. (*Id.* ¶ 11.)

As for the hallway security footage, defendants concede that footage of Lindell exiting the recreational area exists and had not been produced by accident. Defendants acknowledge the mistake and represent that they are making it available to Lindell for review. However, defendants represent that no security camera would capture the doorstep to the recreation room because there is only one overhead camera that captures the recreation room where Lindell was stabbed, and which defendants provided to Lindell.

this issue.

Further, defendants say they turned over all of the overhead camera footage that captured the incident. Specifically, Kartman explains that the assault took place in Alpha Recreation Room 3, and Lindell was in cell #216, and Keith was in cell #223, meaning that Keith and Lindell walked down Alpha Range 2 from their cell, and walked down Alpha Range 3 to get to Alpha Recreation Room 3. Kartman represents that all of the footage from the overhead cameras in those ranges as well as inside the recreation room, were preserved and provided to Lindell for his review. (Second Kartman Decl. (dkt. 85) ¶¶18, 20, 22, 24, 26, 29.)

Lindell claims that Kartman is lying, and that defendants did not provide all BWC footage from staff who were wearing body cameras. In support, Lindell cites his own reply brief in support of his previous motion to compel, in which he claims that defendants did not turn over body camera footage related to events that took place after the assault. However, as I previously noted, defendants represent that no additional BWC footage exists, and Lindell has not submitted any evidence beyond conjecture to the contrary. (*See* dkt. 70, at 6-7.) Given Kartman's explanation and specificity with respect to the individuals whose bodycam footage was provided to Lindell, and that Lindell does not dispute Kartman's representations beyond his unsupported assertion that Kartman is lying, I see no basis to revisit Lindell's belief that there is more BWC footage, or that defendants wrongfully destroyed any footage. Accordingly, I'm denying Lindell's motion to compel and will not sanction defendants for failure to preserve any relevant video footage.

4

Relatedly, Lindell also asks that defendants be required to turn over the video footage that defendants have already produced to his "agents." (Dkt. 96.) In particular, Lindell asks that the footage be turned over to his "agents," Dr. Zigmond and Peg Swan, who Lindell says will provide the footage to an information technology expert, who would review the footage to determine whether defendants doctored it. Lindell also claims that Zigmond and Swan will share the videos with attorneys to help him find counsel. Lindell represents that he asked defense counsel to turn over the footage, but he says that counsel never responded to that request. (Lindell Decl. (dkt. 94) ¶ 4; Ex. 104 (dkt. 94-4).) He also asks, in light of defendants' obstruction and his need to depose defendants, that I recruit counsel for him.

I'm denying both of Lindell's requests. First, I will not require defendants to send Zigmond or Swan the video footage. They are not parties to this lawsuit, they are not attorneys of record in this lawsuit, Lindell has not identified either of these individuals as an expert in this lawsuit, and I previously explained that Lindell has not adequately explained why I should order defendants to produce the footage to Dr. Zigmond. (*See* dkt. 79, at 3; dkt. 70, at 10-11.) As to Lindell's concern that the footage he has reviewed has been tampered with, Lindell has not submitted evidence suggesting that defendants altered any of the footage they turned over. Although Lindell argues that I should infer defendants' bad faith because their responses to his various discovery requests have been incomplete or slow, and he has dealt with delays related to technical issues at his institution, Lindell has not identified any portion of the footage that he reviewed

5

suggesting that defendants altered it. Therefore, there is no basis to require defendants to turn the footage to Zigmond, Swan, or anyone these individuals might share this footage with.[2]

## II. Motion to Amend (dkt. 86)

Lindell seeks to proceed on a proposed amended complaint, in which he seeks to proceed against two additional defendants and add additional allegations related to his failure to protect and retaliation claims. Although this court grants motions to amend freely as justice requires, district courts may deny leave to amend under Federal Rule of Civil Procedure 15(a) for undue delay, bad faith, undue prejudice to the opposing party, or futility. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).

On September 17, 2019, the court issued the Preliminary Pretrial Conference Order, warning Lindell that the longer he wanted to seek leave to amend his complaint, the less likely it is that the court would allow him to amend. (Dkt. 43, at 4.) Lindell did not file his motion for leave to amend until June 11, 2020, after the court had pushed back the dispositive motion deadline to July 15, 2020. Lindell has a reason for his delay, but it's not a persuasive one. He claims that defendants prevented him from seeking to amend his complaint until now because their refusal to produce relevant document has distracted him from focusing on whether he could add additional defendants to this lawsuit. Yet

---

[2] If Lindell is able to secure counsel, or if an attorney considering whether to represent him requests a review of the footage produced in discovery, I may require the footage turned over for his or her confidential and limited review.

Lindell is an experienced and adept litigator, and if he'd intended to amend his complaint in this lawsuit, I'm confident that he would have preserved his ability to do so by seeking permission much earlier in this lawsuit. Defendants have been litigating this case just as diligently as Lindell, and it would unduly prejudice them to have to pause this lawsuit for additional discovery and motion practice. Accordingly, I'm denying Lindell's motion to amend.

### III. Motion to Extend Dispositive Motion Deadline

Finally, Lindell seeks to extend the July 15, 2020, dispositive motion deadline until at least August 24, 2020. However, I already extended the May 15, 2020, dispositive motion deadline, and Lindell has not explained why he needs more than another month to prepare a motion for summary judgment. Instead, his basis for the extension is that courts treat *pro se* litigants with leniency. That is true, but Lindell has not explained how he is unable to meet the July 15, 2020, dispositive motion deadline. My decision denying his request to proceed on a second amended complaint removes the need for the parties to re-start the discovery process, and it appears that Lindell has adequate access to the materials he needs to prepare a motion for summary judgment, should he decide to do so. Accordingly, Lindell's motion to extend the dispositive motion deadline is denied.

### ORDER

IT IS ORDERED that:

1) Defendants' motion for leave to file sur-reply (dkt. 98) is GRANTED.

2) Plaintiff Nate Lindell's motion for sanction or to compel (dkt. 80), motion to compel (dkt. 96) are DENIED.

3) Plaintiff's motion to amend (dkt. 86) is DENIED.

4) Plaintiff's motion to extend dispositive motion deadline (dkt. 95) is DENIED.

Entered this 9th day of July, 2020.

                        BY THE COURT

                        /s/

                        STEPHEN L. CROCKER
                        Magistrate Judge