IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

NATE A. LINDELL,

              Plaintiff

v.

GARY BOUGHTON,
LEBBEUS BROWN,
C.O. SHAWN GALLINGER, and
MARK KARTMAN,

              Defendants.

OPINION AND ORDER

Case No.  18-cv-895-slc

_____

*Pro se* plaintiff Nate A. Lindell is proceeding in this lawsuit under 42 U.S.C. § 1983, against defendants Boughton, Brown, Gallinger, and Kartman on Eighth Amendment claims for their alleged failure to protect him from being shanked on October 8, 2018, at the Wisconsin Secure Program Facility (WSPF) by another prisoner, Jesse Keith. Lindell also is proceeding against Kartman on a First Amendment retaliation claim for his decision to transfer him immediately to the Green Bay Correctional Institution (GBCI). This order resolves four motions: I am denying Lindell's motion for reconsideration and his two motions to compel (dkts. 104, 105, 106). I am granting defendants' motion for partial summary judgment (dkt. 100).

I.    **Lindell's Motions**

    **A. Motion for Reconsideration (dkt. 104)**

Lindell asks that I reconsider my order July 9, 2020, order in which I denied his motions (1) seeking to compel defendants to turn over all video footage of the events related to his stabbing, (2) requesting that I direct defendants to turn over the video footage

1

to his agents, and (3) seeking to amend his complaint. Seeing no manifest error of law or fact with respect to any of these rulings, I am denying this motion, as well as Lindell's related motion to compel (*see* dkt. 105).

*First,* on July 9, 2020, I concluded that there was no evidence calling into question the legitimacy of defendant Kartman's representation that defendants have produced all hallway camera footage and the 16 events of body-worn camera (BWC) footage to Lindell by making it available to him for viewing. In his motion for reconsideration, filed July 29, 2020, Lindell claims he has *not* had the opportunity to review the BWC footage Kartman claims were made available. He further asserts that the court demonstrated partiality in concluding that defendants provided all footage available without holding an evidentiary hearing.

In opposition, defendants maintain that the 16 events of body camera footage *were* preserved and provided. But defendants do acknowledge that there was a delay in getting them to Lindell; they explain that two of the three DVDs containing the footage got lost at Lindell's institution, so the Wisconsin Department of Justice had to replicate those two DVD's, which were made available for Lindell to view on August 14, 2020.

In his reply and declaration, filed August 27, 2020, Lindell attests that on August 17, 2020, he was allowed to review the video footage, which contained 17 video files. Lindell describes the footage as follows:

> #1, 2:55 minutes in duration,
> #2, :51 second in duration, turned off by C.O. Fedie
> #3, 6:08 minutes in duration, turned off by C.O.
> #4, 0:01 second in duration, Lt. Tom turned off
> #5,      , C.O. Gallinger turned off
> #6, 2:25 minutes in duration, C.O. Gallinger turned off

> #7, 6:13 minutes in duration
> #8, 8:11 minutes in duration
> #9, 12:18 minutes in duration
> #10, :02 seconds in duration
> #11, :10 seconds in duration
> #12, 6:10 minutes in duration
> #13, 1:38 minutes in duration
> #14, 10:20 minutes in duration
> #15, 7:04 minutes in duration
> #16, 2:03 minutes in duration
> #17, 7:14 minutes in duration

(Lindell Decl. (dkt. 123) ¶ 1.)  Lindell also says that the only BWC footage showing staff removing him from the recreation room and treating his injuries was from C.O. Hill, and that the first time he saw that footage was August 17.  He claims that "[n]one of the BWC footage that defendant Kartman swore was preserved and provided to me . . . was part of the fore-noted video files" (*id.* ¶ 2), and that there was only ten minutes of fixed security camera footage (*id.* ¶ 4).  But Kartman represented that there were 16 clips of BWC footage and one clip of stand-alone footage.  Kartman made no representation about how much of the BWC footage showed Lindell's removal from the rec room; Kartman acknowledged that 12 of the officers who responded to the attack were not wearing BWC.

Lindell's frustration that he was unable to view all of this footage for so long is understandable, but given that he still has two months before trial and the delays were associated with mistakes and restrictions on prisoner movement due to COVID-19 procedures, I have no basis to conclude that more footage exists or that defendants have

withheld any footage for improper purposes.[1]  Accordingly, I see no manifest error of law or fact in my order declining to sanction defendants or compel them to turn over additional video footage.

*Second*, Lindell seeks reconsideration of my order declining to require defendants to turn over the video footage to his "agents."  Since Lindell's motion to compel (dkt. 105) is interrelated, I incorporate those arguments here.  Lindell has been persistent in his attempts to getting the video footage to his agents-- Dr. Zigmond and Pam Swan --but his justification for the request has changed.  First, Lindell argued that they should have access to the video and audio footage of the events related to the Keith's attack on Lindell because Dr. Zigmond would opine about the conditions of confinement at WSPF, then Lindell suggested Zigmond might use the videos to help Lindell recruit counsel for himself, and *then* Lindell represented that one of his agents would be able to test the video footage to see if it had been tampered with.  I denied each request, concluding that Lindell had not provided sufficient information to justify requiring defendants to turn over the footage to a seemingly uninterested third party.  (Dkt. 99, at 5; dkt. 79, at 3; dkt. 70, at 10-11.)

Now Lindell changes course again, emphasizing that he has the First Amendment right to publicly disclose the video footage, the public has a right to this information, and my orders declining to require defendants to turn them over have infringed those rights.

---

[1] It's worth noting that Lindell further attests that he observed correctional officers, including defendant Gallinger, repeatedly turn off their own or other correctional officers' BWCs when they were discussing the stabbing.  (*Id.* ¶ 6.)  If Lindell did, indeed, observe officers turning off their BWCs, then he may seek an *in limine* order at trial to make such an observation or to question Gallinger or other correctional officers about whether and why they turned off their BWCs.  None of this, however, suggests that defendants are withholding or have failed to preserve footage.  To the contrary, it suggests, as defendants represent, that more footage does not exist.

Lindell adds that in a case he currently is litigating in the Eastern District of Wisconsin, *Lindell v. Pollard*, No. 19-cv-255 (E.D. Wis.), the Wisconsin Department of Justice has agreed to turn the relevant video footage over to Dr. Zigmond. Lindell argues that it is an abuse of discretion to deny his request. I disagree. Absent any indication that Dr. Zigmond actually has an interest in this lawsuit I will not compel defendants to turn over the video or audio footage to him.

The fact that the Wisconsin Department of Justice agreed to turn over evidence to Dr. Zigmond in another case is not dispositive here. In that case, like this one, Lindell sought to compel defense counsel to turn over video footage made available to him in discovery. *See Lindell v. Pollard*, No. 19-cv-255, dkt. 68. The Wisconsin Department of Justice responded that it would not send items to third parties unless it was clear they were interested third parties. *Id.*, dkt. 75, at 3. As such, they took the position that if Dr. Zigmond contacted defense counsel and established a relevant interest in the matter, counsel would mail him the relevant material. When Lindell informed the court that Dr. Zigmond would be contacting defense counsel, the court denied Lindell's motion to compel as moot. *Id.*

As for Lindell's First Amendment argument, my decision not to compel defendants to turn over the video footage to Dr. Zigmond does not infringe Lindell's First Amendment rights. I made no ruling curbing Lindell's speech or preventing him from sending or receiving any discovery materials, and defendants are not restricting Lindell's ability to send or receive mail or other forms of communications. Instead, I concluded that Lindell has not provided a legitimate reason to turn over the footage to someone who, as far as

5

this court is concerned, has no knowledge of this lawsuit and no reason to receive this information.

Lindell still believes his constitutional rights are being violated, and that the public's right to access this information is being infringed. Lindell is incorrect. The law of this circuit is clear: "Generally speaking, the public has no constitutional, statutory, (rule-based) or common-law right of access to *unfiled* discovery." *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009)(emphasis in original); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.") Lindell's cases are not to the contrary; instead, they address more general prisoner rights or First Amendment principles. *See Kalafi v. Brown*, No. 16-cv-847-slc, 2018 WL 1660732, at *6 (W.D. Wis. Apr. 5, 2018) (prisoner's First Amendment right to publish an offensive article outside of the prison); *Jones-El v. Berge*, 164 F. Supp. 2d 1096, 1125 (W.D. Wis. 2001) (addressing conditions of confinement at Supermax prisons); *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011) (employee's First Amendment rights in the context of a matter of public concern); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983)(addressing the press's standing to seek access to suits to which is was not a party).

This segues to defendants' next point: they argue that disclosure of the surveillance video for public use poses a security concern, since third parties may be able to post the videos on social media, making it possible for outsiders to identify potential surveillance and security vulnerabilities. This court does not automatically accept this argument when it is a prisoner litigant who is asking to see the video in his own lawsuit, but the defendants

6

already have provided the videos to Lindell.  The concern here is that they do not want outsiders to see them.  That's a prudent concern, and Lindell has not provided any persuasive reason to override it.  If Dr. Zigmond were to present a more specific explanation of how his review of the footage actually would advance Lindell's prosecution of the instant lawsuit, then I would consider allowing him to review it under this court's routine safeguards in this situation.  *See, e.g.*, *Hall v. Spears*, No. 17-cv-749-bbc, 2018 WL 3238651, at *1 (W.D. Wis. July 2, 2018); *Alexander v. Meli*, No. 17-cv-585-jdp, 2018 WL 3302992, at *1 (W.D. Wis. July 5, 2018).  Right now, nothing before the court suggests that Dr. Zigmond has an interest in this lawsuit.  Accordingly, I see no manifest error of law or fact in declining to compel defendants to disclose the footage to a third party, and I'm denying Lindell's related motion to compel.

*Third*, Lindell challenges my denial of his request to proceed on an amended complaint.  Lindell focuses on his proposed addition of Correctional Officer Dustin Jaynes as a defendant to Lindell's failure to protect claim, since he learned that Jaynes was responsible for searching Keith, Lindell's attacker, before Keith entered the same room as Lindell.  But the court has broad discretion in considering motions to amend, and the prejudice to defendants--requiring them to conduct additional discovery and potentially delay the trial in this case--was obvious.  I also noted that Lindell did not seek leave to amend until June 11, 2020, which was after the May 15, 2020 deadline to file summary judgment motions had been extended to July 15, 2020.  This would have completely disrupted the timely and orderly progression and resolution of this case, which militated toward requiring a strong showing that the ends of justice were best served by allowing the

7

proposed amendment. I concluded that Lindell did not provide an adequate explanation for his failure to seek leave to amend sooner.

Lindell claims that this was an abuse of discretion, since defendants did not actually argue prejudice, and because, in his view, the *defendants* were responsible for Lindell's delay. Lindell asserts that defendants did not correct Lindell's mistaken belief that Gallinger and his trainee were responsible for escorting Keith to the recreation room. Lindell adds that it was only when he viewed the video footage in May of 2020 that he was able to confirm that it was Jaynes and not Gallinger who searched Keith. (*See* Lindell Decl. (dkt. #108) ¶ 5.) This is patently incorrect.

In defendants' August 12, 2019 answer to Lindell's Amended Complaint they explicitly denied that defendant Gallinger performed the pat search on Keith. (*See* dkt. 39, ¶¶ 37, 39.) More critically, in a January 24, 2020 discovery response, defendants explicitly stated, "Correctional Officer Dustin Jaynes did the pat search and no one observed it." (Second Grzebielski Decl. (dkt. 116) ¶ 3, Ex. 1000.) Yet Lindell waited until June 11, 2020, to seek leave to file a second amended complaint. (Dkt. 86.)

Lindell claims that defendants lied in their answer, pointing to their admission that Gallinger was training a new officer and the new officer escorted Keith to the rec area. (*See* dkt. 39 ¶ 36.) This admission and the fact that Jaynes conducted the pat search are easily and logically reconciled. Regardless, any confusion left by defendants' answer was explicitly cleared up by their January 24, 2020, response specifically identifying Jaynes as the officer responsible for the search. Again, Lindell has no persuasive explanation for his

six-month delay in pursuing a claim against Jaynes. Therefore, I see no manifest error of law or fact in my denial of his motion to amend.

In sum, although Lindell has identified a problem with his access to video footage that has since been rectified, I see no basis to reconsider the rulings in my July 9, 2020, order. Accordingly, Lindell's motion for reconsideration is denied.

### B. Motion to Compel Regarding Footage and Policies (dkt. 106)

Lindell seeks an order compelling defendants to allow him to view the BWC footage. Defendants respond that this motion is moot, citing Lindell's ability to view the three DVDs on August 14. Again, Lindell clarifies that he viewed the footage on August 17, and argues that he does not have *all* of the BWC footage. I addressed Lindell's concern about whether he has viewed all available footage earlier in this order and will not revisit it here.

That said, although I will not grant Lindell's motion, I agree with him that he should have additional opportunities to review the video footage. Trial currently is scheduled to begin on December 7, 2020. Before then, officials at Columbia must provide Lindell the opportunity to review all of the video clips produced two more times before trial. Lindell should have the ability to speed up, slow down, and zoom in on the footage, if Columbia's playback devices can do these things. Hereafter, if Lindell runs into problems reviewing the video footage, then he should attempt to work them out directly with defense counsel before coming to the court.

## II. Motion for Partial Summary Judgment (dkt. 100)

Defendants seek summary judgment on Lindell's retaliation claim against defendant Kartman. I granted Lindell leave to proceed on a First Amendment retaliation claim against defendant Kartman for transferring Lindell from WSPF to Green Bay Correctional Institution (GBCI), after Lindell was attacked.

In response to defendants' motion, Lindell has not responded to defendants' proposed findings of fact or legal arguments. Instead, he filed a two-page document indicating that although he does not oppose the motion, he believes he will be able to show on appeal that this court abused its discretion in declining to recruit counsel for him. Since defendants' motion is unopposed, I am granting it. To the extent that Lindell intends to renew his request for assistance in recruiting counsel, that request is denied.

Lindell argues that, but for his transfer, he would have been able to gather evidence that he was transferred because he was likely to sue and prison staff "wanted to persist in using prisoners to attack" each other. (Dkt. 124 at 2.) As an example, Lindell claims that mail he attempted to exchange with WSPF prisoners has not been delivered, and that defendants have not been cooperating with his discovery requests. Lindell submits a declaration from WSPF prisoner Quentin Thompson, who attests that after Lindell was stabbed, (1) he wrote to Lindell, offering to serve as a witness for him, but never received a response from Lindell, and (2) Lindell later told him that he had sent him two letters that he never received. (Thompson Decl. (dkt. 125) ¶ 7.) Lindell believes that when he

appeals this lawsuit, he will be able to show that a volunteer attorney would have been able to gather evidence to support this claim.

As I have explained many times in this lawsuit, Lindell is an experienced litigator in this court. His circumstances simply do not merit recruitment of counsel. Lindell has demonstrated his ability to gather discovery with respect to all of his claims in this lawsuit, including his retaliation claim. His apparent inability to communicate with Thompson doesn't convince me otherwise. Lindell has not explained how Thompson would have been able to give him information suggesting that Kartman's decision to transfer him to Columbia was in any way related to Lindell's litigation history. Nor has Lindell outlined how Kartman refused to respond to any discovery requests that would have supported Lindell's response to the pending motion for summary judgment.

Tellingly, Lindell made no mention of this concern in either of his motions seeking to extend his time to respond to defendants' motion. (*See* dkts. 107, 118.) Given Lindell's aggressive approach to discovery in this case, I have no doubt that he would have come to the court sooner if he had believed that defendants were preventing him from gathering evidence in support his retaliation claim. The same holds true to the extent Lindell is making a broader claim that he has been unable to gather evidence related to his Eighth Amendment failure to protect claims, all of which are proceeding to trial. Indeed, Thompson and Lindell are communicating, so there is no reason to conclude that Lindell needs an attorney. As such, I see no basis to find that Lindell's ability to litigate his retaliation claim was hindered by his transfer to another institution.

ORDER

IT IS ORDERED that:

1) Defendants' motion for partial summary judgment (dkt. 100) is GRANTED, and Lindell's First Amendment retaliation claim against defendant Kartman is DISMISSED with prejudice.

2) Plaintiff Nate Lindell's motions (dkts. 104, 105, 106) are DENIED.

Entered this 16th day of October, 2020.

BY THE COURT

/s/

STEPHEN L. CROCKER
Magistrate Judge