IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NATE A. LINDELL,

      Plaintiff,

v.

GARY BOUGHTON,
LEBBEUS BROWN,
C.O. SHAWN GALLINGER, and
MARK KARTMAN,

      Defendants.

OPINION and ORDER

Case No. 18-cv-895-wmc

*Pro se* plaintiff Nate Lindell is proceeding in this lawsuit under 42 U.S.C. § 1983, against defendants Boughton, Brown, Gallinger, and Kartman, on Eighth Amendment claims for their alleged failure to protect him from being shanked on October 8, 2018, at the Wisconsin Secure Program Facility by another prisoner, Jesse Keith. The parties are in the process of completing their pretrial filings, but there are three issues that require action from the court.

*First*, Lindell again asks that I recruit counsel for him for purposes of trial. (Dkt. 197.) Although Lindell's reasons are not without traction, I remain unpersuaded that Lindell cannot effectively litigate his claims at trial without an attorney. Put the other way, I find that Lindell is capable of trying this case to the jury without the assistance of an attorney. Lindell maintains that because he suffers from PTSD as a result of Keith's attack, he should not be subjected to the trauma of litigating this case without the help of an attorney. I sympathize with the mental toll that re-living this experience may cause Lindell, but that toll

1

will be paid whether or not Lindell has an attorney at trial. With or without an attorney, Lindell is going to have to recount what happened to him and watch the videos of the attack. Absent a more specific showing—which could be an opinion from a professional who has treated Lindell's PTSD--that Lindell's PTSD might be triggered during the course of trial or otherwise would materially impede his ability to try this case, I conclude that Lindell's proffered mental health challenges do not prevent him from effectively litigating this case.

Lindell also insists that he needs an expert to testify about how the assault caused long-term injuries and pain, which in turn requires recruitment of counsel. Lindell elaborates that defendants seek an in limine ruling that Lindell may not submit opinion evidence about the permanence of his injuries because he has not disclosed an expert witness who would provide such opinion testimony. While it is true that Lindell has not disclosed an expert in this case, I have no basis to conclude that the absence of an attorney was the reason for this omission. Lindell has not filed a motion asking that the court appoint a neutral expert related to medical issues, despite several of Lindell's filings suggest that he was in contact with an individual whom he was considering using as an expert for a non-medical issue. In any event, Lindell has not attested that he made any effort to retain an expert on his own and that those efforts have failed. Therefore, I am not persuaded that Lindell's failure to disclose a medical expert is a reason to recruit counsel for him.

Lindell similarly cites the difficulties he has had in obtaining trial witnesses. However, absent a compelling objection by defendants to Lindell's request for certain prisoners to testify on his behalf, I am inclined to grant his request for testimony from some of those

individuals (although it will likely be via videoconference).  Further, as explained below, I will take steps to assist Lindell in arranging for the appearance of one unincarcerated witness.

Lindell also reasserts his belief that defendants are withholding video footage of events surrounding the assault. I already have considered and rejected Lindell's argument related to the allegedly missing footage.  Lindell's dissatisfaction with my rulings is not a reason to recruit counsel for him.

Finally, Lindell proffers the substantive merit of his claims as a reason to get him an attorney.  If this were a relevant consideration, it could cut in the other direction just as easily, but the operative question is not the strength of the case, it's the ability of the plaintiff to litigate it.  Lindell has shown himself to be well-versed with the relevant legal standards and with the events underlying his claims.  He is capable of presenting his evidence and arguments just as well as many attorneys who appear before this court.  Accordingly, for the reasons explained above and as previously explained in this case (*see* dkts. 35, at 16-17; 70, at 10; 137; 155, at 1), I am denying Lindell's motion.

*Second*, in Lindell's witness disclosures, he lists Correctional Officer Sheryl Hill, and reports that he may need a subpoena for her appearance at trial. (Dkt. 192.)  According to Lindell, CO Hill responded to the attack, and she commented to Lindell that Keith (1) should never have been allowed into the same recreation room with Lindell, and (2) was known to make weapons and stab people.  Hill's testimony clearly would benefit Lindell, but the court needs more information about Hill before it issues a subpoena for her appearance.

The Trial Preparation Order explains that if an unincarcerated witness agrees to testify voluntarily, then Lindell is responsible for arranging for his or her appearance. (1/28/21 Order, dkt. 156, at 9, 21-22.) The order further provides that if an unincarcerated witness refuses to testify voluntarily and Lindell wants the court to issue a subpoena for her testimony, Lindell must attest that: (1) the witness refuses to testify voluntarily; (2) he has made arrangements for service of the subpoena or cannot pay for service and needs the assistance of the U.S. Marshal to effect services; and (3) he is prepared to tender to the person serving the subpoena a check or money order made payable to the witness in the amount necessary to cover the daily witness fee and, if applicable, mileage and costs for an overnight stay. (*Id*.) So far, all Lindell has provided is his willingness to pay for the cost of Hill's testimony (dkt. 181). That said, Lindell has made known to the court and defense counsel since February of 2021 his intent to call Hill as a witness (*see* dkts. 159, 181, 192), and he has reported that he does not know how to locate her and that he does not believe defense counsel would provide her contact information (although I infer that he never asked). I will direct defense counsel to provide to the clerk of court information about Hill, including (1) whether she is still employed by the DOC, (2) whether Hill will testify on Lindell's behalf voluntarily, and (3) if she will not testify voluntarily, her home address or the address of her employment.

If Hill is willing to testify voluntarily, then the court will work with her schedule and have her testify via videoconference. If Hill is unwilling to testify voluntarily, then I will set a short deadline by which Lindell must remit to the court a check in the amount necessary to cover the daily witness fee ($40), and her travel expenses ($0.56 per mile).

4

*Third*, the parties should be aware that Judge Conley has a criminal jury trial starting on November 1 that is unlikely to plead out. This means that we probably will pick our jury on Monday afternoon. This might be all that we accomplish on Monday, although both sides should be prepared to present opening statements. If the parties have any concerns about this, then they should notify the court.

## ORDER

It is ORDERED that:

1. Plaintiff Nate Lindell's motion to appoint counsel (dkt. 197) is DENIED.

2. As soon as possible but not later than October 14, 2021, defendants' counsel must provide the Clerk of Court the following information about Correctional Officer Sheryl Hill: (1) whether she is still employed by the DOC, (2) whether Hill will testify on Lindell's behalf voluntarily, and (3) if she will not testify voluntarily, her home address or the address of her employment so that the USMS can serve her with a trial subpoena.

Entered this 7th day of October, 2021.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge