IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NATE LINDELL,

       Plaintiff,

v.

GARY BOUGHTON,
LEBBEUS BROWN,
C.O. SHAWN GALLINGER, and
MARK KARTMAN,

       Defendants.

OPINION AND ORDER

Case No. 18-cv-895-slc

---

*Pro se* plaintiff Nate Lindell is proceeding in this lawsuit under 42 U.S.C. § 1983, against defendants Boughton, Brown, Gallinger, and Kartman, on Eighth Amendment claims for their alleged failure to protect him from being shanked on October 8, 2018, at the Wisconsin Secure Program Facility (WSPF) by another prisoner, Jesse Keith. This case is proceeding to trial on November 1, 2021. The court is holding a telephonic final pretrial conference on October 25, 2021, at 10:00 a.m. In this order I address: the parties' motions in limine (dkts. 188, 199); the parties' disclosed exhibits and witnesses (dkts. 186, 192); the court's proposed voir dire, jury instructions, and special verdict form (attached to this order); defendants' motion to appear via videoconference (dkt. 212); and Lindell's supplemental motion in limine (dkt. 215).

1

OPINION

**I.     Defendants' Motions in Limine (dkt. 188)**

In their first of 5 motions in limine, defendants seek an order excluding reference to details of other legal proceedings involving defendants, or any inmate grievances against defendants, except those related to this case, or defendants' personnel file. Defendants' position is that this evidence has no relevance, and even if relevant, its introduction would be unfairly prejudicial, tend to confuse the jury and waste time during trial.

Additionally, contend the defendants, evidence that defendants may have wronged inmates in the past is inadmissible under F.R. Ev. 404, unless such evidence would be admissible under Rule 404(b), to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* The Seventh Circuit has adopted a four-part test to determine whether "other acts" evidence is admissible under Rule 404:

> First, proof of the other act must be directed towards establishing a matter in issue other than the defendant's propensity to commit like conduct. Second, the other act must be of recent vintage and sufficiently similar to be relevant to the matter in issue. Third, there must be a sufficient amount of evidence for the fact finder to conclude that the similar act was committed. And fourth, the probative value of the evidence must not be outweighed by the danger of unfair prejudice.

*Okai v. Verfuth*, 275 F.3d 606, 610-11 (7th Cir. 2011).

Lindell has not proffered any judgments or any affirmed inmate complaints that he seeks to admit at trial, and defendants affirmatively represent that they have no known judgments against them in lawsuit involving their work in the prison setting. Accordingly, this motion is GRANTED.

Second, defendants ask the court to exclude details of any other lawsuits against the

2

Wisconsin Department of Corrections or its current or former employees, citing F.R. Ev. 404(b). Lindell has not objected to this motion, and it is well taken, so it is GRANTED.

Third, while conceding that Lindell may testify about his own perception of his physical and mental health before and after the incident, defendants seek to exclude any argument, questions, testimony, or evidence regarding the causation of physical injury, permanence, future care and treatment, or future pain and suffering. Lindell has not objected. The cause of Lindell's physical injuries is within his personal knowledge, and he is able to provide details about his psychological state prior to and after the attack, so he may testify about his perceived source of his injuries related to Keith's attack. However, I agree with defendants that Lindell may not opine about permanence of those injuries, his need for future care and treatment, or his predictions of future pain and suffering, nor may he express any other *medical* opinions regarding those injuries, their severity or prognosis. If the parties need further guidance about this ruling, then we can talk about this at the FPTC.

Fourth, defendants seek an order permitting them to impeach Lindell during cross-examination with questions about his criminal convictions under Federal Rule of Evidence 609(a)(1)(A). Lindell was convicted of the following felonies: (1) 1st-Degree Intentional Homicide, in violation of Wis. Stat. § 940.01(1), a Felony A level, on March 3, 1998; (2) Arson of a Building without Owner's Consent, in violation of Wis. Stat. § 943.02(1)(a), a Felony B level, on March 3, 1998; (3) Burglary-Commit a Battery on Person, in violation of Wis. Stat. § 943.10(2)(d), a Felony B level, on March 3, 1998; (4) Battery by Prisoners, in violation of Wis. Stat. § 940.20(1), a Felony D level, on December 29, 2003; and (5) Prisoner Throw/Expel Bodily Substances, in violation of Wis. Stat. § 946.43(2m)(a), a Felony I level, from October 3, 2013. Publicly available records of those convictions show that

3

Lindell was sentenced to life in prison on the homicide conviction, 20 years' incarceration for the burglary conviction, and 30 years' incarceration for the arson conviction. *See* https://wcca.wicourts.gov/case.html; https://wscca.wicourts.gov/caseSearch.xsl (last visited Oct. 20, 2021).

Each conviction was punishable by imprisonment for more than one year, and it has not been more than 10 years since Lindell's release from confinement for these offenses. Defendants therefore propose the following single question: "You have been convicted of five felonies, correct?"

Lindell's position is that only one of these convictions is admissible under Rule 609, but he does not identify the conviction or explain why the remaining convictions are inadmissible. Rule 609(b) limits evidence of convictions "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Lindell does not indicate that it has been more than 10 years since he finished serving his sentence for any of the five felonies list above. The defendants' proposal—limiting their inquiry to one generic question—not only is acceptable, it's what the court would have ordered in the face of a defense request to put the nature of Lindell's convictions before the jury. Further, the court will provide a limiting instruction after Lindell answers this question, so that the jury is aware that they may only consider the fact of Lindell's convictions in assessing his credibility. (What the defendants personally knew about Lindell's convictions and their beliefs about his dangerousness is a different question. More on this below). The bottom line is that the motion is GRANTED, and defendants may ask the proposed question of Lindell on cross-examination.

4

Fifth, defendants seek to exclude hearsay statements of other prisoners related to defendants' statements. Defendants anticipate that Lindell will try to introduce statements of other prisoners himself, rather than through the prisoner. I agree that such statements are inadmissible, so the motion is GRANTED. That said, below I am granting Lindell's request for the testimony of four prisoners. Lindell is free to elicit testimony from those witnesses about statements they heard any actual *defendant* make, but to the extent these witnesses would testify about statements by non-defendants, Lindell should carefully review the hearsay exclusions (Rule 801(d)) and exceptions (Rule 803) as he plans his questions. If the defendants make well-taken hearsay objections at trial, then the court will grant them.

## II.     Plaintiff's Motions in Limine (dkt. 199)

Lindell seeks five in limine rulings.  *First*, he seeks exclusion of his misconduct history, noting portions of defendants' Exhibits 522, 529-31 that reference his prior misconduct. Lindell asks that those references be redacted from the exhibits.  In opposition, defendants explain that, in response to Lindell's argument that Keith posed a specific threat to Lindell, or someone in Lindell's position, they will argue that Lindell was "equally, if not more, dangerous than Keith," and therefore did not pose a specific threat to Lindell.  To prove their theory of defense, defendants seek to introduce evidence of Lindell's criminal and misconduct history to prove that Lindell was actually dangerous (or that defendants perceived him to be that dangerous), and that he should have been placed on administrative confinement.  I agree that defendants may use this information for that *specific* purpose, so this motion is DENIED. But we need to set limits on how each defendant may present his beliefs, lest the jury improperly conclude from the defendants' testimony that Lindell is simply a dangerous person who deserved whatever he got.  So, defendants must proffer to the court at the final pretrial conference how they intend to explore this with the defendants at trial.  In any event, Lindell is entitled to a limiting instruction on this information each time that it is put before the jury.

*Second*, Lindell seeks to exclude reference to the specifics of his convictions, arguing that only one conviction is admissible and that only the date of conviction is admissible.  As discussed above, defendants intend only to ask whether Lindell has been convicted of five felonies, all of which are admissible under Rule 609(b).  Defendants' watered-down question does not stand to prejudice Lindell to such a degree that exclusion is appropriate.  Therefore, this motion is DENIED.

6

*Third*, Lindell asks that defendants be precluded from asking his incarcerated witnesses specific questions about their convictions or asking about any convictions over ten years old. Based on my rulings related to Lindell's proposed witnesses, at the FPTC, defendants must make a proffer of the questions they intend to ask these witnesses under Rule 609. Accordingly, this motion is RESERVED.

*Fourth*, Lindell seeks to exclude evidence that Lindell had requested but defense counsel concealed or failed to produce. There is no indication that defense counsel engaged in this type of conduct, so this motion is DENIED. I will deny the motion without prejudice to Lindell's ability to renew it, if he can in good faith direct the court to defendants' evidence that was improperly withheld during discovery.

*Fifth*, Lindell seeks to exclude "insulting or derogatory" comments by defense counsel or their witnesses about Lindell's history of filings grievances and lawsuits. Defendants do not object, so the motion is GRANTED.

*Sixth*, Lindell seeks to exclude any argument or suggestion that a verdict in his favor may damage defendants' reputation, impair their professional status, or burden taxpayers. Defendants do not object, so the motion is GRANTED.

### III.   Exhibits (dkts. 187, 196)

Defendants disclosed 57 exhibits. (*See* Attachments to dkt. 197.) Exhibits 500-502 are forms and correspondence related to events that took place before the October 8, 2018, assault. Exhibits 503-521 are incident reports created by various WSPF staff that responded to the assault. Exhibits 520 and 521 are documents related to Keith's conduct report proceedings for the assault. Exhibit 522 is a recommendation for administrative confinement

for Lindell, dated October 8, 2018. Exhibit 523 is a letter from Boughton to Gallinger written after the assault. Exhibits 524 is an "After Action Review" dated November 8, 2018. Exhibits 525-528 are Risk Assessment Information Guides related to Keith; Exhibits 529-530 are Lindell's Risk Assessment Information Guides and a Program Review Classification Report. Exhibits 532-57 all contain video footage of events related to the assault.

Lindell objects to Exhibits 522, 523, and 529-531 on relevance grounds, asking that portions of these exhibits be redacted. These exhibits, which include information about Lindell's criminal history and disciplinary history, are relevant to defendants' knowledge about the risk that Lindell posed to other prisoners. Lindell argues that this information is not relevant to whether defendants were deliberately indifferent to the risk that Keith would assault him. Defendants contend that their knowledge of Lindell's criminal history and disciplinary history while incarcerated is relevant to whether they were aware of and/or believed that Lindell would be at risk of serious harm if placed in a recreation cell with Keith. Defendants have a point up to a point, but as noted above, they cannot put *everything* in front of the jury, and their use of the information that is admissible is subject to a limiting instruction to the jury. As noted above, defendants must prepare and present a narrowed version of Lindell's background for the jury's consideration. Whether any exhibits need to be redacted depends on how the court allows the exhibits to be used at trial. For instance, the court does not see any need for these exhibits to be published to the jury or sent to the jury room during deliberations because they are relevant only to the question of what the defendants knew and believed about Lindell. We will discuss this more at the final pretrial conference.

Lindell also maintains that information about his criminal history for a conviction that is

older than 10 years is not admissible. As noted above, this evidence is admissible for impeachment purposes under Rule 609, subject to the stated limitations. Further, this information is admissible to a degree yet to be determined because defendants contend that Lindell's criminal history and dangerousness informed their decisions about his placement at WSPF.

As for Lindell's exhibits (*see* dkt. 196), defendants object to Exhibits 1 and 154. Exhibit 1 is a conduct report from August 2010 related to a fight between Lindell and another inmate (*see* dkt. 88-1), and defendants object on relevance grounds. I will hear from Lindell as to the relevance of this exhibit, but I'm not seeing it. This report relates to events that took place over eight years before the events in this lawsuit, and none of the defendants appear to have been involved in those events.

Exhibit 154 is a pamphlet from Veterans Affairs on PTSD, and defendants object on hearsay grounds. Absent some showing that the pamphlet is admissible under some exception to the rule against hearsay, I will sustain this objection and exclude this exhibit.

Finally, I note that earlier today Lindell filed two documents, dkts. 219 and 220, in which Lindell discloses more new exhibits. Lindell states that he attempted to include these materials in his October 6, 2021, submissions but omitted them by mistake. However, on October 8, 2021, I issued a text only order that accepted Lindell's pretrial submissions from October 1 and 4, but not from October 7, finding that accepting Lindell's later-filed submissions would unduly prejudice defendants. (*See* dkt. 207.) These new exhibits also fall into the October 7 category of submissions that would unduly prejudice defendants, so defendants need not respond to them. Lindell's exhibit list filed with the court on October 1, 2021 (dkt. 196), is his operative exhibit list. Lindell should plan accordingly.

## IV. Witnesses

Lindell has named the following trial witnesses: the defendants; Correctional Officer (CO) Sheryl Hill; and prisoners Quenton Thompson, Jesse K. Keith, Terrance Prude, Bobby Kimble, Vincent Whitaker, Bryan Hudson, and Wayne Sutton. (Dkt. 192.)[1] Lindell also filed a motion for issuance of writs of habeas corpus ad testificandum for the testimony of Thompson, Keith, Prude, Kimble, Whitaker, Hudson, Sutton, and Tony Caravella. (Dkt. 193.) Although the parties probably already know this, my practice is to only call a witness once in a trial. Therefore, absent a persuasive argument otherwise, I will expect defendants to present *all* of their testimony when they testify in Lindell's case in chief.

I previously asked defendants to advise the court whether CO Hill will testify voluntarily. Defendants have indicated that Hill will testify voluntarily (dkt. 208), and they do not object to her testimony specifically. Moreover, defendants' Exhibits 540-545 are video footage of Hill's body worn camera (BWC), so I agree that Hill will be able to testify about what happened on October 8, 2018. I will direct the clerk of court to arrange for her testimony via videoconference.

As for the incarcerated witnesses, defendants raise three general objections, which I address before turning to each proposed witness. *First,* defendants observe that multiple prisoner witnesses would testify about how a 2018 implementation of a program at WSPF called "Passing Through Administrative Confinement Effectively" (PACE), required prisoners to participate in group recreation time together to advance out of administrative confinement

---

[1] Today Lindell filed an amended disclosure (dkt. 217) that adds Caravella as a witness, citing his PTSD for his failure to list this witness. This explanation does not establish good cause, but Lindell had listed Caravella in his timely motion for writs of habeas corpus testificandum so I will consider Lindell's request on its merits.

into general population, and that requirement created a threat to prisoner safety. Defendants object to any testimony about risks associated with the PACE program on relevance grounds. Defendants correctly point out that the key question in this case is whether they had actual knowledge that *Keith* posed a specific threat to Lindell or a prisoner in Lindell's position, but defendants overreach by asking that I completely exclude reference to the risks associated with the PACE program.

I granted Lindell leave to proceed against defendants based on his allegations that the defendants knew that this feature of the PACE program would give Keith access to Lindell, and that they further knew, or had reason to believe, that Keith might assault Lindell, but they nonetheless permitted Keith to be part of PACE and in a recreation room with Lindell. (Dkt. 35, at 8-9.) I agree that it is Lindell's burden to connect the dots between the alleged safety deficiencies within the PACE program and Keith's ability to assault him. Toward that end, details about the program itself and defendants' involvement in making decisions about Keith's and Lindell's placement in the program and their ability to participate in recreation with other inmates, provide necessary context. Accordingly, this objection is overruled, but Lindell must bear in mind that the evidence about the PACE program must be limited to providing sufficient context for the jury to understand (1) what the PACE program is, and (2) defendants' involvement in the decisions about Keith's and Lindell's placement in the level of the PACE program that required them to participate in recreation with other prisoners.

*Second*, defendants object to any prisoner testimony that is hearsay or based on hearsay. Defendants are correct, and I will rule on any properly raised objections during trial.

*Third,* defendants object to the inclusion of more than one prisoner testifying about a meeting related to the change in the PACE program and they ask that any prisoner witness

11

testify by videoconference.  The strain on the DOC's resources posed by this court requiring prisoner witnesses to appear in person is substantial, and the court is making every effort to follow COVID-19 procedures during jury trials.  Therefore, *all* prisoner witnesses will be required to testify via videoconference.  I will incorporate defendants' cumulative objection in determining which prisoners may testify.  Here are those rulings.

<u>Quenton Thompson</u>.  Thompson submitted a declaration in this case, indicating his willingness to testify on Lindell's behalf.  (Dkt. 125.)  Thompson's declaration indicates he would testify that:  he was present for a May 2018 meeting, during which defendant Brown discussed how prisoners participating in the PACE would be placed in recreation rooms together, and Brown acknowledged that this practice would cause prisoners to fight with each other; based on conversations Thompson had with defendants Gallinger and Brown, these defendants knew that Keith had a motive to harm Lindell; Keith was known as WSPF's most dangerous prisoner; and Brown wanted Lindell to be attacked.  I agree that what Thompson heard Brown say in May of 2018 is admissible and relevant to Lindell's claim, as are Brown's and Gallinger's statements about Keith's animus towards Lindell.  Therefore, this motion is GRANTED as to Thompson.  That said, Lindell should plan his questions for Thompson carefully.  Thompson's declaration appears to contain certain statements about what non-defendant correctional officers said to him: these statements are inadmissible hearsay. Thompson can testify about what he heard a *defendant* say because such statements do not constitute hearsay under Federal Rule of Evidence 801(d)(1)(2).

<u>Jesse Keith</u>.  Lindell states that, Keith, as the person who stabbed him, could testify whether he was acting an agent of the defendants.  Lindell's representation about Keith's testimony appears to be completely speculative.  Regardless, Lindell is not proceeding on a

12

conspiracy claim against defendants. Therefore, Keith's testimony would confuse the issues before the jury in a manner that might unduly prejudice defendants. Lindell's motion with respect to Keith is DENIED.

Terrance Prude. Previously in this lawsuit Prude submitted a declaration in which he attested that he knew that Gallinger and Brown knew that Keith wanted to stab Lindell. (Dkt. 25.) Specifically, Prude attests that in September 2018, he heard Brown tell Keith not to make metal knives, and that he heard Gallinger ask Keith whether he would harm Lindell if they were placed in recreation together, to which Keith responded, "Let's find out." Because Prude has since submitted a letter stating that he refuses to testify voluntarily (dkt. 71), Lindell asks that I issue a subpoena for Prude's appearance. Although I question the wisdom in calling this witness, given that Lindell has other voluntary witnesses willing to testify about Gallinger's and Brown's knowledge, I will grant this request. In doing so, I note that Lindell has not made arrangements for service of the subpoena, attested that he cannot pay for service and needs the assistance of the U.S. Marshal to effect service, or indicated that he is prepared to tender to Prude a check or money order made payable to the witness in the amount necessary to cover the daily witness fee, as required by this court's procedures. (*See* dkt. 156, at 21.) However, Lindell is not required to tender these payments for a subpoenaed incarcerated witness, *see* 28 U.S.C. § 1821(f), and I am willing to direct the U.S. Marshal to serve this subpoena. Accordingly, this motion is GRANTED as to Prude, and I will direct the clerk of court to prepare a subpoena for Prude's appearance at trial via videoconference, for service by the U.S. Marshal.

Bobby Kimble. Kimble submitted a declaration attesting that he heard Lindell yelling after Keith attacked him, and that he was present at the same May 2018 meeting as

13

Thompson, when Brown acknowledged that prisoners would attack each other. (Dkt. 194.) Kimble's testimony about what he heard after Lindell was stabbed is relevant with respect to damages. It would be duplicative of Thompson's testimony for Kimble to testify about the May 2018 PACE meeting, so that's off the table. Accordingly, the motion is GRANTED with respect to Kimble, as limited by this order.

Vincent Whitaker. Whitaker was also present for Brown's May 2018 meeting about PACE and would testify generally that Brown knew that WSPF staff expected more fights at group activities. (Dkt. 195.) Whitaker's testimony duplicates that which would be provided by Thompson and Lindell about Brown's knowledge, so this motion is DENID as to Whitaker.

Tony Caravella. Lindell represents that Caravella is willing to testify on Lindell's behalf that he was stabbed in a recreation room at WSPF in 2017, but Brown has continued to use dangerous group recreation practices at WSPF. This testimony is not relevant to whether in October of 2018, Brown was aware that Keith posed a substantial risk to Lindell's safety. Accordingly, Lindell's request for a writ for Caravella's appearance is DENIED.

Wayne Sutton. Lindell represents that Sutton is willing to testify that he was Lindell's cellmate after the October 8, 2018, attack, and that he witnessed Lindell experience, among other things, nightmares and panic attacks. This testimony is relevant to Lindell's damages, so Lindell's request as to Sutton is GRANTED.

Bryan Hudson. In June of 2020, Hudson submitted a declaration indicating he is willing to testify that he was celled with Lindell and was familiar with Lindell's psychological injuries. (*See* dkt. 89.) However, Lindell does not indicate whether Hudson remains incarcerated or remains willing to testify at trial, and it appears that this individual may no

14

longer be incarcerated. As such, Lindell's motion is DENIED as to Hudson. If this witness is unincarcerated and willing to testify in this case, Lindell may arrange for his appearance at trial.

To summarize, I will grant Lindell's motion with respect to Thompson, Prude, Kimble, and Sutton, and I am directing the clerk of court to prepare a subpoena for service on Prude, and to arrange for each of these prisoners and for CO Hill to testify via videoconference, as provided below. During the FPTC, I will also discuss with the parties how this will work logistically.

V.    Voir Dire, Jury Instructions, and Verdict Form
      A. Voir Dire

The parties submitted proposed voir dire questions to supplement the court's standard questions. I have included questions related to how the potential jurors feel about prisoners and law enforcement generally. The remaining questions are fairly standard, and I have included the standard questions this court has been asking related to COVID-19. I ask that the parties carefully review the statement of the case and come to the FPTC prepared with any proposed revisions.

### B. Jury Instructions

For the most part, I incorporated the parties' proposed instructions along with the court's standard instructions. Consistent with defendants' submissions, the proposed instructions do not anticipate bifurcation. Lindell has included three proposed instructions. The first two proposed instructions incorrectly state the elements of his claims, so I have excluded them. Lindell's third proposed instruction describes how the jury should consider spoliation of evidence. I have excluded this instruction because I have not found that defendants have destroyed evidence in a bad faith effort to avoid admission of that evidence. (*See* dkts. 70, 99.) I see no basis to reconsider that conclusion.

### C. Special Verdict

I reviewed the parties' proposed special verdicts (dkts. 133, 198), and modified them to ensure that the questions track the jury instructions and omits unnecessary questions. The court's proposed special verdict form consists of four questions. The parties may raise any specific objections to the court's proposed verdict during the FPTC.

## VI. Defendants' Motion to Appear by Videoconference (dkt. 212)

Defendants ask that one witness, Nicole McDaniel, testify via videoconference. They explain that McDaniel is no longer employed by the DOC, her testimony is brief, and allowing her to testify by videoconference would not interrupt her regular work duties and enhance COVID-19 safety procedures in the courthouse. The motion is GRANTED. Defendants are directed to promptly reach out to the clerk's office and the court's IT department to arrange for her testimony.

**VII.     Lindell's Supplemental Motion in Limine (dkt. 215)**

Finally, Lindell asks that I order Deputy U.S. Marshals, as opposed to DOC officials, to sit near him for security purposes during trial, citing the prejudicial optics of being guarded in this manner.  That's not going to happen.  As a starting point, this is not the responsibility of the Marshals Service.  Second, the Marshals Service in this district is understaffed; ordering them to perform this task would unduly and improperly interfere with their ability to perform their actual job responsibilities.  This court makes every effort to diminish the prejudice posed by prisoners' incarceration before juries (including allowing Lindell to dress in street clothes and forbidding physical shackles in the courtroom for parties), but this court will not interfere with the DOC's security-related decisions, which includes who is responsible for guarding Lindell during trial.  Absent an explicit and properly justified request from the DOC for security assistance, I will not ask the Marshals Service to participate in this trial. Accordingly, the motion is DENIED.

ORDER

It is ORDERED that:

1. Defendants' amended motion in limine (dkt. 188) is GRANTED in part and RESERVED in part, as provided above.

2. Plaintiff Nate Lindell's motion in limine (dkt. 199) is GRANTED in part, DENIED in part, and RESERVED in part, as provided above.

3. Plaintiff's motion for writs of habeas corpus testificandum (dkt. 193) is GRANTED as to Quenton Thompson, Terrance Prude, Bobby Kimble, and Wayne Sutton, for testimony via videoconference from their institution on November 1, 2021.  It is DENIED as to Jesse Keith, Bryan Hudson, and Tony Caravella.

4. Defendants' motion to allow witness testimony by video (dkt. 212) is GRANTED. Defense counsel is responsible for making arrangements with this court for the

    testimony, likely to take place on November 2, 2021.

5. Plaintiff's motion regarding witness Shelly D. Hill (dkt. 216) is DENIED as moot.

6. Plaintiff's supplemental motion in limine (dkt. 215) is DENIED.

7. The clerk of court is directed to prepare a subpoena for the videoconference testimony of prisoner Terrance Prude for trial on November 1, 2021, for service by the U.S. Marshal.

8. The clerk of court is directed to arrange for videoconference testimony of CO Sheryl Hill and prisoner Quenton Thompson on November 1, 2021, and of prisoners Bobby Kimble, Terrance Prude, and Wayne Sutton on November 2, 2021.

Entered this 20th day of October, 2021.

                        BY THE COURT:

                        /s/

                        STEPHEN L. CROCKER
                        Magistrate Judge