IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NATE LINDELL,

    Plaintiff,

v.

GARY BOUGHTON,
LEBBEUS BROWN,
C.O. SHAWN GALLINGER, and
MARK KARTMAN,

    Defendants.

OPINION AND ORDER

Case No. 18-cv-895-slc

Plaintiff Nate Lindell is proceeding in this lawsuit under 42 U.S.C. § 1983, against defendants Gary Boughton, Lebbeus Brown, Shawn Gallinger, and Mark Kartman, on Eighth Amendment claims for their alleged failure to protect him from being shanked on October 8, 2018, at the Wisconsin Secure Program Facility by another prisoner, Jesse Keith. This case is proceeding to trial on July 24, 2023.

The court is holding an in-person final pretrial conference (FPTC) on July 12, 2023, at 2:30 p.m. In this order I briefly address the parties' motions in limine (dkts. 257, 270); the parties' disclosed exhibits and witnesses; and the court's proposed voir dire, jury instructions, and special verdict form (attached to this order).

OPINION

I.    Defendants' Amended Motions in Limine (dkt. 257)

Defendants seek seven rulings:

*First*, defendants seek assurance that my prior ruling stands regarding the admissibility of evidence of the program titled "Passing Through Administrative Confinement Effectively"

1

(PACE). Lindell has alleged that prisoners in administrative confinement seeking to earn privileges and promotion to general population were required to participate in PACE, which required them to attend recreation with other prisoners. Lindell alleged that this aspect of the PACE program created a threat to prisoner safety and contributed to Keith's ability to attack him. Defendants previously sought to exclude evidence of the PACE program on relevance grounds, and I ruled that:

> Evidence about the PACE program must be limited to providing sufficient context for the jury to understand (1) what the PACE program is, and (2) defendants' involvement in the decisions about Keith's and Lindell's placement in the level of the PACE program that required them to participate in recreation with other prisoners.

(Dkt. 221.) Defendants contend that Lindell cannot challenge the PACE program itself because such an argument would create an impermissible *Monell* claim since Lindell is proceeding against the defendants in their individual capacities.

Lindell is not proceeding on a challenge to the policies, customs, or practices governing or related to the PACE program. So, I agree with defendants that Lindell cannot challenge the PACE program *ipsa*, and that his claims in this lawsuit are about each defendant's involvement in placing him with Keith in a recreation cell. There is no indication that Lindell or his attorneys contend otherwise. If the parties need more specific guidance about the admissibility of evidence about the PACE program, they should seek it during the FPTC.

*Second*, defendants seek to prohibit Lindell from testifying about five categories of allegations from his first amended complaint, as inadmissible hearsay. My rulings as to the categories are as follows:

    A. Lindell alleged that in the Restrictive Housing Unit (RHU) at WSPF there were many fights and stabbings between unsupervised inmates. Although in his amended

2

complaint Lindell identified five violent encounters between inmates, Lindell testified in his deposition that he did not have firsthand knowledge of those fights. In opposition to defendants' motion, Lindell argues that this motion is premature because the excited utterance or present sense impression hearsay exceptions may apply. I will RESERVE as to this subpart of the motion, subject to a proffer of Lindell's anticipated testimony that would meet either exception.

B. Lindell alleged that staff would watch video footage of fights between inmates for entertainment. Lindell does not plan to testify about this, so I will GRANT this part of the motion.

C. Lindell alleged that there was a May 2018 meeting about the PACE program, during which defendant Brown stated that administration knew there would be fights but they wanted them to "Get them out of their system." Lindell does not plan to testify about this either, so I will GRANT this part of the motion.

D. Lindell alleged that Jesse Keith was sent to WSPF because he was too dangerous to remain in the Iowa prison system, that Keith had founded a white supremacist gang, that Keith manufactured and taught others to manufacture knives from fixtures in their cells, and that Keith stabbed and directed others to stab inmates and staff. During his deposition Lindell stated Keith had told him about his background, and also that defendant Gallinger had told him about where Keith had come from and why he was at WSPF, and that Keith was "more dangerous" than Lindell, and in fact "one of the most dangerous people" at WSPF. (Lindell Dep. (dkt. 262) 64-65.) Defendants ask that the court exclude any statements not made by Gallinger. Lindell responds cates that he intends to only testify about the conversation he had

3

with Gallinger. This motion is GRANTED in part and RESERVED in part. Lindell may testify about what Gallinger told him about Keith, and I will hear more from Lindell's counsel during the FPTC about how they intend to admit any further testimony from Lindell about Keith.

E. Lindell alleged that a June 6, 2018, weapons search of WSPF prisoners on administrative confinement recovered over 30 homemade knives. Lindell testified that he did not have personal knowledge of weapons found that day, and instead that Gallinger told him that staff had found 30 weapons. Defendants seek to exclude any testimony about the search except for what Gallinger told him, and Lindell does not intend to testify about anything else on this subject beyond what Gallinger told him. This motion is GRANTED in part and RESERVED in part. Lindell may testify about what Gallinger told him about the June 6 weapons search, and I will hear from Lindell's counsel about the admissibility of any other testimony on that topic from Lindell, given his deposition testimony.

*Third* and *Fourth*, defendants seek orders excluding reference to details of other legal proceedings involving defendants, or any inmate grievances against defendants, except those related to this case, or defendants' personnel file, as well as the any other lawsuits against the Wisconsin Department of Corrections or its current or former employees. These motions are GRANTED as unopposed, and for the reasons I previously explained (*see* dkt. 221, at 2-3).

*Fifth*, while conceding that Lindell may testify about his own perception of his physical and mental health before and after the incident, defendants seek to exclude any argument, questions, testimony, or evidence regarding the causation of Lindell's physical injury,

4

permanence, future care and treatment, or future pain and suffering. This motion is GRANTED in part and DENIED in part. I previously ruled that:

> The cause of Lindell's injuries is within his personal knowledge, so he may testify about the perceived source of his injuries. However, I agree that Lindell may not opine about permanence of those injuries, future care and treatment, or future pain and suffering, nor may he express any other *medical* opinions regarding those injuries, their severity or prognosis.

(*Id.* at 3.) Defendants offer no reason to change this ruling. In addition, plaintiff represents that the parties will stipulate that Lindell had been diagnosed with post-traumatic stress disorder (PTSD) before the attack, and plaintiff's counsel argues that Lindell should be able to testify about how his PTSD symptoms changed after the attack. I agree that a change in his symptoms is within Lindell's personal knowledge, and he may testify about any changed or new symptoms of PTSD, including any new PTSD triggers he has experienced after the attack.

*Sixth*, defendants seek an order permitting them to impeach Lindell during cross-examination with questions about his criminal convictions under Federal Rule of Evidence 609(a)(1)(A). Lindell was convicted of the following felonies: (1) 1st-Degree Intentional Homicide, in violation of Wis. Stat. § 940.01(1), a Felony A level, from March 3, 1998; (2) Arson of a Building without Owner's Consent, in violation of Wis. Stat. § 943.02(1)(a), a Felony B level, from March 3, 1998; (3) Burglary-Commit a Battery on Person, in violation of Wis. Stat. § 943.10(2)(d), a Felony B level, from March 3, 1998; (4) Battery by Prisoners, in violation of Wis. Stat. § 940.20(1), a Felony D level, from December 29, 2003; and (5) Prisoner Throw/Expel Bodily Substances, in violation of Wis. Stat. § 946.43(2m)(a), a Felony I level, from October 3, 2013. Lindell was sentenced to life in prison on the homicide conviction, 20 years' incarceration for the burglary conviction, and 30 years' incarceration for the arson conviction. Each conviction was punishable by imprisonment for more than one

year, and it has not been more than 10 years since Lindell's release from confinement for these offenses.

Consistent with my previous ruling, defendants ask that I allow defense counsel to ask the following question: "You have been convicted of five felonies, correct?" This motion is GRANTED. Defense counsel may only inquire further into the nature of the convictions if Lindell denies their existence or does not respond with a simple "Yes."

*Seventh*, defendants seek to exclude hearsay statements of other prisoners related to defendants' statements. Defendants anticipate that Lindell will try to introduce statements of other prisoners himself, rather than through the prisoner. Lindell has not responded to this motion. I will RESERVE on this motion and give Lindell the opportunity to identify any anticipated testimony from Lindell about what other prisoners said that might fall into one of the hearsay exceptions.

## II.   Lindell's Motions in Limine (dkt. 270)

Lindell seeks five in limine rulings. *First*, Lindell seeks to exclude evidence of his criminal convictions. This motion is GRANTED IN PART AND DENIED IN PART consistent with my ruling on defendants' sixth motion in limine discussed above, but I need to clarify what defense counsel may ask. In response to Lindell's motion, defendants state that they intend only to ask whether Lindell has been convicted of five felonies, and what each conviction is for. (*See* dkt. 281 at 1.) That's not going to happen. Defense counsel may not inquire into the nature of Lindell's convictions unless Lindell opens the door by denying their existence.

*Second*, Lindell seeks to dress in street clothes and not be shackled when the jury is present. This motion is GRANTED. Lindell's attorneys are responsible for providing the clothing and coordinating with court security to get Lindell dressed ahead of trial. DOC may place an electric security bracelet on Lindell that is not visible to the jury, but DOC may not shackle Lindell in the jury's presence.

*Third*, Lindell seeks to exclude details of his prison conduct history. Defendants raise three arguments in opposition. First, they contend that Lindell's conduct reports for lying are admissible for impeachment purposes under Fed. R. Evid. 608(b). Although conduct reports for lying might be probative of truthfulness, defendants have not disclosed any of Lindell's conduct reports as exhibits, nor have they flagged any conduct reports that they would like to use during cross-examination. They must do so prior to the FPTC so that the court can discuss this with the parties and make its ruling(s).

Defendants also argue that Lindell's conduct history is necessary to provide context for his placement in the PACE program of administrative confinement and why he and Keith were permitted to be in the recreation room together. Defendants may admit some general information about how Lindell's conduct history impacted his placement in administrative confinement and the PACE program. But defendants have not shown that it is necessary to delve into details about specific instances of misconduct to lay this foundation, nor do they explain how they intend to provide that context. They will have to do so prior to the FPTC. I expect that some or all of this evidence will derive from defendants' Exhibits 529, 530, 531, which relate to Lindell's placement and risk assessment, with defendant Warden Boughton testifying about those documents, *see* dkt. 259, at 4, but defendants will have to clarify this.

Finally, defendants explain that, in response to Lindell's argument that Keith posed a specific threat to Lindell, or someone in Lindell's position, they will argue that defendants knew that Lindell was "equally, if not more, dangerous than Keith," and therefore they did not believe that Keith posed a specific threat to Lindell. To prove their theory of defense, defendants seek to introduce evidence of Lindell's criminal and misconduct history to prove that Lindell was actually dangerous (or that defendants perceived him to be that dangerous), and that he should have been placed on administrative confinement.

This is a fraught evidentiary issue. I agree with defendants that they may use this some of this information for this specific purpose, but we will need to set limits on how defendants may present their knowledge and impression of Lindell. Therefore, this motion is RESERVED, pending a discussion with the parties as to precisely what evidence about Lindell's conduct history will be introduced at trial, for what purpose, and with what limiting instructions from the court.

*Fourth*, Lindell seeks to exclude evidence that he served time in federal prison. I agree that this evidence is irrelevant and prejudicial, so this motion is GRANTED.

*Fifth*, Lindell seeks to exclude evidence of Lindell's history of filing lawsuits while incarcerated. I agree that this evidence is only slightly probative and unfairly prejudicial, so this motion is GRANTED.

### III.    Exhibits (dkts. 259, 283)

I am directing the parties to submit their exhibits to the court prior to the FPTC.

Defendants' amended exhibit list is located at Dkt. 259, and Lindell's objections are located at Dkt. 283. I will admit Defendants' Exhibits 500-502, 520-521, and 524-528 because Lindell does not object to them.

Lindell objects to the remaining exhibits. I will rule on the objections during the FPTC, with these preliminary observations:

Exhibits 502-519 are incident reports created by various WSPF staff who responded to the assault. Lindell objects on hearsay grounds and for lack of foundation. Defendants might intend to use the incident reports to refresh defendants' recollection of events that occurred the date of the assault; we will discuss this at the FPTC.

Exhibit 522 is a recommendation for administrative confinement for Lindell, dated August 8, 2018. Exhibit 523 is a commendation letter from Boughton to Gallinger written after the assault. Lindell objects to these exhibits based on relevance and unfair prejudice grounds, and as unfair character evidence. Exhibit 522 might be relevant to refresh recollection, depending on whether any of the defendants reviewed this placement recommendation. Exhibit 523 was written after the assault, so the relevance and unfair prejudice objections appear well-taken.

Exhibits 529-530 are Lindell's Risk Assessment Information Guides and a Program Review Classification Report, from August and September of 2018. Lindell objects under Rules 401 and 403. It might be appropriate for defendants to use these documents to establish their knowledge about Lindell as of October 2018. Defendants will have to redact these exhibits to exclude information about Lindell's criminal convictions and to limit the details about Lindell's criminal history, depending on how I rule on Lindell's third motion in limine.

Exhibits 532-57 are videos of events related to the assault. Lindell objects to Exhibits 532-35 on foundation and relevance grounds. We will discuss this at the FPTC.

Lindell's exhibit list is filed at Dkt. 274, and defendants' objections are found at Dkt. 280, at 2-3. I am reserving on defendants' objections for discussion during the FPTC. Here is an overview of the objections and a preview of where the court probably is headed:

Exhibit 24, policies and procedures about the use of body cameras. Defendants object on relevance grounds. Because there is no issue in this case involving the proper use of body cameras, I agree that these policies appear irrelevant, but I will hear from Lindell before sustaining the objection.

Exhibit 27, inmate complaint form submitted by Lindell on July 18, 2018. Defendants object because Lindell's statements on the form are hearsay and because he made statements without personal knowledge. Lindell's statements are hearsay; we will discuss at the FPTC whether any exceptions apply.

Exhibit 29, an October 15, 2018, email from defendant Brown to the security supervisor about precautions and restrictions for Keith. Defendants object because measures taken after the assault are inadmissible under Fed. R. Evid. 407's prohibition of subsequent remedial measures. These objections seem well-taken but we will discuss this at the FPTC.

Exhibit 31, an October 8, 2018, incident report by Shelly Hill. Defendants object to the report as hearsay but acknowledge that it may be used to refresh Hill's recollection.

Exhibit 32, an October 10, 2018, email exchange between Peter Jaeger and Boughton. Defendants object as inadmissible hearsay. I have not reviewed the substance of the exchange, so we will address this at the FPTC.

Exhibit 33 and 34, documents related to a PREA complaint Lindell filed against another inmate in May 2018.  Defendants object that these documents are irrelevant, confusing and hearsay.  These objections appear well-taken.

## IV.   Witnesses

Defendants' object in part to the testimony of Dr. Paul Mariskanish, who treated Lindell immediately after he was stabbed.  Defendants do not object to Dr. Mariskanish testifying about the treatment he provided Lindell or his personal observations of Lindell's injuries.  However, because Dr. Mariskanish was not disclosed as an expert, defendants object to Dr. Mariskanish testifying about the causation of Lindell's injuries, opinions about care that Lindell might require in the future, or the permanence of Lindell's injuries.  The causation of Lindell's physical injuries is obvious, so Dr. Mariskanish can testify about the cause of Lindell's injuries.  In the absence of an expert report, Dr. Mariskanish may not opine about future care or permanence.  We can discuss this further at the FPTC if necessary.

The parties have not raised any other issues with the witnesses.  If either side wishes to have a witness appear via videoconference, they should notify the court as soon as possible, but no later than the FPTC.

## V.   Voir Dire, Jury Instructions, and Verdict Form

### A. Voir Dire

The parties submitted proposed voir dire questions to supplement the court's standard questions.  I have included questions related to how the potential jurors feel about prisoners and law enforcement generally.  The remaining questions are fairly standard.  I ask that the

11

parties carefully review the statement of the case and come to the FPTC prepared with any proposed revisions.

### B. Jury Instructions

For the most part, I incorporated the parties' proposed instructions along with the court's standard instructions. Consistent with defendants' submissions, the proposed instructions do not anticipate bifurcation.

### C. Special Verdict

The court's proposed special verdict form consists of four questions. The parties may raise any specific objections to the court's proposed verdict during the FPTC.

## ORDER

It is ORDERED that:

1. Defendants' amended motion in limine (dkt. 257) is GRANTED in part and RESERVED in part, as provided above.

2. Plaintiff Nate Lindell's motion in limine (dkt. 270) is GRANTED in part, RESERVED in part, and DENIED in part, as provided above.

Entered this 7th day of July, 2023.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge